# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF MONTANA

In re

**TRAVIS J. SCHWEIGERT,**

Debtor.

Case No. 20-90044-BPH

## MEMORANDUM OF DECISION

In this Chapter 13[1] case, on August 29, 2019, the Court held a hearing on Travis Schweigert's ("Debtor") Objection to Proof of Claim No. 6 filed by Tamara Schweigert[2] ("Tamara") and Tamara's Objection to Confirmation Debtor's Amended Chapter 13 Plan.[3] Appearances were made on the record. No testimony or evidence was offered. Counsel for Tamara requested permission to file a reply addressing the arguments made in Debtor's supplemental brief in support of his Objection to Proof of Claim No. 6 filed on September 9, 2020.[4] The request was granted and Tamara filed a reply on September 17, 2020.[5]

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.
[2] ECF No. 80.
[3] ECF No. 74.
[4] ECF No. 92.
[5] At the beginning of the hearing, the Court inquired regarding the issues in dispute and noted that in some cases disputes involving the determination of the validity, priority, or extent of a lien require an adversary proceeding. Counsel agreed on the record that an adversary proceeding was not required in this context. In Tamara's reply brief at ECF No. 98, she reversed course, arguing, "If the question is whether or not the lien is valid, that is an entirely different question, and one which should be adjudicated in a separate adversarial proceeding pursuant to Rule 7001." As Colliers explains:

> The validity of a lien may be determined in contexts other than adversary proceedings. A common situation is when a secured creditor files a proof of claim and the trustee or

1

The Court has reviewed the Objections, Supplemental Briefs, and Responses filed by Debtor and the Tamara. Based on the record developed before the Court, the following constitute the Court's findings of fact and conclusions of law to the extent required by Rules 7052 and 9014.

## I. BACKGROUND

Debtor filed his petition for Chapter 13 relief on March 10, 2020.[6] Tamara timely filed a proof of claim, and later amended it ("Amended Claim").[7] The Amended Claim is $42,432.86. The Amended Claim is allegedly secured by a security interest in Debtor's livestock brands and branded livestock. Debtor objected to the secured status of Tamara's Amended Claim.[8] Tamara filed a response to Debtor's objection.[9] Both parties filed Memorandums of Law in support of their respective positions.[10]

Tamara's alleged security interest in Debtor's brands and branded livestock arises from a November 4, 2018 Writ of Execution ("Writ") she obtained after recovering a judgment against Debtor in Lake County District Court.[11] The district court's "Order Granting Fees and Costs and Final Judgment" made no mention of Debtor's brands or branded livestock.[12] However, the Writ directed the Montana Department of Livestock ("DOL") to satisfy the judgment "out of brands

---

    debtor in possession files objections thereto pursuant to Rule 3007. It is possible for the trustee to dispute the secured status of a creditor filing a proof of claim by denial and affirmative defense without filing an adversary proceeding. Unless the creditor can establish its secured status, its claim will be disallowed as a secured claim.

10 Collier on Bankruptcy P 7001.03 (16th 2020).
ECF No. 98.
[6] ECF No. 1.
[7] *See* Claim 6-2.
[8] ECF No. 80.
[9] ECF No. 89.
[10] *See* ECF No. 92 and 98.
[11] ECF No. 74 at 2.
[12] Exhibit A to ECF No. 80.

2

owned or maintained by [Debtor] with the [DOL]."[13] Notably, the Writ did not direct the DOL to actually place a lien on Debtor's brands or branded livestock. By its terms, the Writ expired 120 days after it was received by the DOL.[14]

After obtaining the Writ, Tamara also filed a "Notice of Security Interest Covering Branded Livestock" ("Notice") with the DOL.[15] The exact date the Writ was served on the DOL is not entirely clear. The record shows only that the Notice has a "Creation Date" of November 27, 2018.[16] Tamara contends that by mailing the Writ to the DOL, filing the Notice, and paying the associated filing fee, "she was granted a secured lien" against Debtor's brands.[17]

Debtor argues that Tamara's contention is incorrect for three reasons. First, Debtor contends that mailing the Writ accompanied by the Notice does not create a valid security interest in brands or branded livestock.[18] Second, Debtor asserts that if any security interest was created through Tamara's filing, that security interest expired in March of 2019, is no longer enforceable, and Tamara's claim is unsecured.[19] Finally, Debtor contends that A.R.M. § 32.15.601, relied on by Tamara, is inapplicable to her claim.[20] Thus, Debtor contends Tamara is only entitled to an unsecured claim in the amount of the state court judgment.

## II.  ISSUE

Tamara's Objection to Confirmation, Debtor's Objection to Tamara's Proof of Claim, and supplemental briefing filed by both parties raise the following issue: Did the filing of the

---

[13] Exhibit 2 to ECF No. 74.
[14] *Id*.
[15] Exhibit 3 to ECF No. 74.
[16] The Court is unable to determine the significance of this "Creation Date."
[17] ECF No. 89 at 4.
[18] ECF No. 80 at 2.
[19] *Id*. at 3.
[20] ECF No. 92 at 3-4.

3

Writ and Notice with the DOL create and perfect a security interest in Debtor's brands or branded livestock?

### III. ANALYSIS

A properly filed proof of claim constitutes prima facie evidence of the validity and amount of the claim. Rule 3001(f). Where an objection to the claim is filed, the objector must rebut the presumption of validity, and the claimant must sustain the ultimate burden of proof. *In re Holm*, 931 F.2d 620, 623 (9th Cir. 1991). Here, Debtor objected to Tamara's claim and contended that Tamara is simply a judgment creditor who failed to perfect a judgment lien in Debtor's brand. This fulfilled Debtor's burden to rebut the presumption of validity with respect to Tamara's claim. Thus, Tamara bears the ultimate burden to establish the validity of her alleged secured claim.

Section 506 of the Bankruptcy Code governs the determination and treatment of secured claims in bankruptcy proceedings. A claim cannot be a "secured claim" for purposes of § 506(a) unless it is secured by a "lien" on property in which the bankruptcy estate has an interest. 4 COLLIER ON BANKRUPTCY ¶ 506.03[1] (Richard Levin & Henry J. Sommer eds., 16th ed.). Liens generally fall into three categories: judicial liens, statutory liens, or consensual liens. *In re Strobbe*, 2007 WL 2562611 *2 (Bankr. D. Mont. 2011). "Those three categories are mutually exclusive and are exhaustive except for certain common law liens." *Id*.

Tamara does not contend that attachment or perfection of her alleged brand mortgage arises from common law. Tamara concedes that her alleged lien is nonconsensual.[21] Tamara also concedes that her alleged lien is not statutory.[22] Thus, the validity of Tamara's secured claim

---

[21] *See* ECF No. 98 at 18 (describing a brand mortgage as "a non-consensual lien.").
[22] *Id*. at 11 ("Admittedly, there is no specific statute which states that money judgments convert

hinges on whether she executed her judgment in accordance with Title 25 of the Montana Code.

### A. Execution of Judgments under Montana Law.

Montana law provides that from the time a judgment is docketed, it becomes a lien upon all real property of the judgment debtor located in the county. Mont. Code Ann. § 25-9-301(2). However, the act of docketing a judgment does not have the same effect on a judgment debtor's personal property. "With regard to personal property, which, unlike real property, is not referred to in the statute as subject to a lien immediately when a judgment is docketed, a lien does not arise prior to execution on that property." *In the Estate of Bolinger*, 1998 MT 303, ¶ 76, 292 Mont. 97, 971 P.2d 767. Stated more simply, a judgment does not become a lien against personal property until there has been an execution to enforce the judgment. *Id.*, ¶ 76.

The Montana Supreme Court has made clear that personal property includes "everything that is the subject of ownership, not coming under denomination of real estate." *Hanson v. Estate of Bjerke*, 2004 MT 200, 322 Mont. 280, 95 P.3d 704 (citing Black's Law Dictionary, 1217 (6th ed. 1990)). Under this expansive definition, brands and branded livestock are clearly categorized as forms of personal property. *See also In re Guardianship of Plummer*, 137 Mont. 168, 350 P.2d 846 (listing "livestock" and "a livestock brand" as personal property in which a party held an ownership interest). Thus, Montana law governing the execution of judgments against personal property guides this analysis.

The most common method by which a judgment is enforced against a judgment debtor's personal property is by writ of execution. *See* Mont. Code Ann. § 25-13-201 ("When the judgement is for money or the possession of real or personal property, the judgment may be

---

to secured liens against any livestock brands that the judgment debtor might hold.").

enforced by writ of execution."). A writ permits a sheriff or other levying officer to levy on the judgment debtor's personal property and satisfy the judgment from the value of the property. Mont. Code Ann. § 25-13-402(1)(a). The sheriff or levying officer must accomplish this levy within 120 days after receiving the writ. *Id.*

To execute a judgment by levy, the sheriff or levy officer simply seizes the personal property described in the writ, sells the property, collects the proceeds, and pays the judgment creditor "as much of the proceeds as will satisfy the judgment." Mont. Code Ann. § 25-13-402(1)(a)(i)–(iii). Until the levy occurs, personal property remains unencumbered by any interest a judgment creditor claims simply because of their status as a judgment creditor. *See* Mont. Code Ann. § 25-13-501 ("Until a levy, property is not affected by the execution.").

In this case, Tamara obtained a judgment against Debtor in state court on June 23, 2018. At that time, her judgment became a lien on all Debtor's real property in Lake County under Mont. Code Ann. § 25-9-301.[23] However, without a writ of execution Tamara was unable to satisfy her judgment out of Debtor's personal property, including his brands. She obtained a writ of execution on November 4, 2018. The Writ directed the DOL "to satisfy the judgment out of brands owned or maintained by [Debtor] with the [DOL]" within 120 days after its receipt.

The record is devoid of any evidence that Tamara ever delivered the Writ to the sheriff or levying officer for purposes of levying on the brands or branded livestock. Instead, the record only indicates that Tamara mailed the Writ and Notice to the DOL. Tamara contends that simply filing the Writ and Notice with the DOL created a nonconsensual lien on Debtor's brands pursuant to A.R.M. § 32.15.601(3). In essence, Tamara argues that A.R.M § 32.15.601 provides

---

[23] Debtor moved to avoid Tamara's judgment lien at ECF No. 36. The Court granted Debtor's Motion at ECF No. 64 after determining Tamara's judgment lien impaired Debtor's homestead exemption under Montana law.

6

an alternative procedure for satisfying a judgment by writ of execution. The Court disagrees.

### B. A.R.M. § 32.15.601.

Before analyzing the substance of Tamara's interpretation of A.R.M. § 32.15.601, the Court takes this opportunity to explain the role administrative rules play within Montana's statutory scheme.

Administrative agencies like the DOL "enjoy only those powers specifically conferred upon them by the [Montana] Legislature." *Montana Independent Living Project v. Department of Transportation,* 2019 MT 298, ¶ 31, 398 Mont. 204, 454 P.3d 1216. Consistent with this limitation, all rules adopted by administrative agencies must fall within the applicable legislative guidelines. *Id*. Administrative rules that conflict with statutory requirements or exceed the authority provided by statute are *per se* invalid. *Clark Fork Coalition v. Tubbs*, 2016 MT 229, ¶ 25, 384 Mont. 503, 380 P.3d 771.

Administrative rules are intended to accomplish one of several discrete tasks. Indeed, the definition of the term "rule" in Montana's Administrative Procedures Act makes clear that administrative rules are simply intended to "implement[t], interpre[t], or prescribe[e] law or policy or describe[e] the organization, procedures, or practice requirements of an agency." Mont. Code Ann. § 2-4-102(11)(a). Administrative rules are intended to "add substance to the acts of the Legislature to complete absent but necessary details and resolve unexpected problems" associated with the operation of an administrative agency. *McGree Corp. v. P.S.C.,* 2019 MT 75, ¶ 34, 395 Mont. 229, 438 P.3d 326.

The foregoing makes clear that an administrative rule may only go so far as a statute allows it. For this reason, administrative rules must reference the statute or other rulemaking authority pursuant to which they are adopted. Mont. Code Ann. § 2-4-305(3). To be effective,

administrative rules must remain within the scope of that statutory authority. Mont. Code Ann. § 2-4-305(5).

The administrative rule relied on by Tamara, A.R.M. § 32.15.601, was adopted by the DOL and addresses brand mortgages. Brand mortgages are also referred to as "notice[s] of security agreement or lien on branded livestock." Subsection (3) of the Rule, relied on by Tamara, provides the following:

> (3) There are two ways to file a brand mortgage:
> (a) all brand owners of the brand sign the brand mortgage papers; or
> (b) by Writ of Execution directing the mortgage to be placed on the brand to enable the department to comply with a court order.

A.R.M § 32.15.601(3).

As required by Mont. Code Ann. § 2-4-305(3), A.R.M. § 32.15.601 notes that it was adopted pursuant to Mont. Code Ann. §§ 81-8-301 and 81-8-304. Section 81-8-301 provides that the DOL is required to "accept and file notices of security agreements…covering livestock" and that "all forms on which the notices are given shall be prescribed by the [DOL] and furnished by the secured party who gives notice." *See* Mont. Code Ann. § 81-8-301(1). Mont. Code Ann. § 81-8-304 provides that the DOL shall charge a fee for such filings.

Tamara asserts that she complied with subsection (3)(b) by filing the Notice and Writ with the DOL. By filing the documents, Tamara contends that she obtained a nonconsensual brand mortgage on Debtor's brands and branded livestock. The Court does not agree. Nothing in A.R.M. § 32.15.601 provides for the *creation* of a nonconsensual security interest in the form of a brand mortgage. Rather, it sets forth the method for *filing* them ("There are two ways to *file* a brand mortgage"). Even more, both Mont. Code Ann. §§ 81-8-301 and 81-8-304 relate to the *filing* of brand mortgages as well. Montana law is clear that the authority of A.R.M. § 32.15.601 cannot exceed the scope set forth in those statutes. Under Tamara's theory, filing a non-specific

8

Writ and Notice with the DOL alone would establish the security interest, thereby disregarding Montana's traditional procedure for executing judgment liens by levy.

Even accepting Tamara's assertions as true, the Court finds that subsection (3)(b) would still not apply to her claim. The plain language of the rule makes clear that a brand mortgage may be filed "by Writ of Execution directing the mortgage to be placed on the brand to enable the department to comply with a court order." Stated more simply, A.R.M. § 32.15.601(3)(b) applies only if three criteria are satisfied: 1) the filing party obtains a Writ of Execution; 2) the Writ of Execution directs the DOL to place a mortgage on the judgment debtor's brand(s); and 3) the Writ of Execution is necessary to enable the DOL to comply with a court order. This Court will not expand the meaning of the plain language found in the A.R.M.

In this instance, Tamara cannot establish the second or third criterion. While she obtained a Writ of Execution, her Writ did not direct the DOL to place a mortgage on Debtor's brands or branded livestock. It simply directed the DOL to "satisfy the judgment out of brands owned or maintained" by Debtor. Further, the DOL was obligated to do so within 120 days of receipt. Assuming Tamara's act of mailing the Writ to the DOL was effective, the DOL was obliged to act within 120 days. The time to act would have expired at some time in March 2019 and the record contains no evidence suggesting that the DOL undertook any action to "satisfy the judgment" before that time.

Additionally, the district court's underlying judgment for which the Writ was issued, is silent on Debtor's brands or branded livestock. It is just a money judgment. The Writ was unnecessary to "enable the [DOL] to comply with a court order." Contrary to Tamara's arguments the facts show that she is a judgment creditor that mailed her Writ to the DOL in November 2018. The 120-day period for action by the DOL expired more than a year before this

bankruptcy. At the time of the petition, Tamara did not have an effective writ in place and there was no outstanding levy on Debtor's brand or branded livestock.

Based on the foregoing, the Court finds that Tamara has not established she has a valid lien in Debtor's brand or branded livestock. Additionally, the Court finds Tamara's assertion that A.R.M. § 32.15.601 provides for the creation of a nonconsensual judgment lien simply by filing a DOL Notice not signed by the Debtor and a writ of execution that does not specifically direct the DOL to place a mortgage on a judgment debtor's brands or branded livestock to be without merit. Even accepting Tamara's assertion as true, the Court finds that she failed to comply with the requirements of A.R.M. § 32.15.601.

For the reasons stated above, the Court will enter a separate order sustaining Debtor's Objection to Tamara's Amended Claim.

Dated October 7, 2020.

BY THE COURT:

Hon. Benjamin P. Hursh
United States Bankruptcy Court
District of Montana